CHARLES E. SIMONDS *vs.* INTERSTATE LUMBER COMPANY.

Middlesex.   May 20, 1913. — June 17, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability.

In an action by a teamster against his employer for personal injuries caused by the tipping over upon the plaintiff of a loaded lumber wagon when it was being driven into a field to unload the lumber, there was evidence that the plaintiff was an experienced teamster, that it was the first time that he had been in charge of the wagon, and that, although the wagon was defective, so far as the plaintiff knew or could see it was all right, that the wagon was loaded a little further forward than a wagon ordinarily would be loaded, that the plaintiff was driv-

ing a horse in the shafts while another horse in the lead was being driven by another driver, and that the plaintiff was walking at the left hand side of the wagon, which was the downhill side when the wagon tipped over. *Held*, that the plaintiff was not negligent as matter of law in being where he was at the time of the accident and that the question, whether he was in the exercise of due care, was for the jury.

In an action by an experienced teamster, against a lumber company by which he was employed, for personal injuries caused by the tipping over upon the plaintiff of a loaded lumber wagon when it was being driven into a field to unload the lumber, there was evidence that the perch of the wagon connecting the axles was shorter than that of any other wagon owned by the defendant and that this made the wagon less stable, that the front springs were old and the rear ones new and that the body of the wagon tipped forward while all the other wagons of the defendant were level, that the king bolt was worn and the holes for the king bolt in the rocker plates also were worn, that the upper rocker plate instead of being flush with the lower one, as it should have been, was half an inch back, that these defects made the king bolt loose and caused the wagon to tip or rock from side to side, which it did more than other wagons of the defendant, and that, when the wagon tipped over, the king bolt broke in the place where it was worn. It also appeared that the wagon was loaded a little farther forward than was common, and that immediately before the accident two other wagons of the defendant had gone safely over the place where this one was upset. *Held*, that there was evidence for the jury that the accident was due to a defective wagon provided by the defendant.

MORTON, J. This is an action of tort to recover for personal injuries received by the plaintiff on September 30, 1910, while in the defendant's employ, by reason of the tipping over upon him of a loaded lumber wagon. The case was submitted to the jury under instructions not objected to by either party. The jury found for the plaintiff and assessed the damages in the sum of $5,000. The defendant thereupon requested the judge* to rule that there was no evidence on which the jury could find a verdict for the plaintiff. The judge so ruled, and by agreement of parties reported the case to this court. If the ruling was erroneous, judgment is to be entered for the plaintiff for $5,000 with interest from the date of the verdict, and costs. If correct, judgment is to be entered for the defendant.

The case is a close one, but we are of opinion that there was evidence of due care on the part of the plaintiff and of negligence on the part of the defendant.

The plaintiff was an experienced teamster and testified that it was the first time that he had driven the wagon, and that so far as

---

* *Morton*, J.

he knew or saw the wagon was all right. The wagon "was loaded a little farther forward" than a wagon would ordinarily be loaded. But it was for the jury to say what effect, if any, that had or should have had on the plaintiff's due care. When the wagon tipped over the plaintiff was "on the nigh side" where a teamster usually drives when walking, and he was, so far as appears, driving in the ordinary way in which a teamster drives a horse in the shafts when there is a horse in the lead being driven by another driver.* In the present case "the nigh side" happened to be the down hill side, but it could not be ruled that for that reason the plaintiff was as matter of law negligent in driving on that side. Moreover there was evidence tending to show that the wagon had partly got over the "six or eight-inch grade" which served for a sidewalk into the field where it was smooth and level when it tipped over. Neither could it be ruled as matter of law that there was anything in the manner in which the plaintiff and the men with him turned and drove across the street into the field where the lumber was to be deposited which showed that the plaintiff and the men with him were not in the exercise of due care, or which contributed to the accident. In addition to the testimony which was introduced at the trial the jury took a view and had the benefit of such observations as that enabled them to make of the place where the accident occurred. No claim is made that the plaintiff did not do all that he could to avoid the accident when he saw that the wagon began to tip, though the defendant contends that he was negligent in being where he was. We think that the question of the plaintiff's due care was for the jury.

The defendant was bound to furnish the plaintiff with a reasonably safe wagon. There was evidence tending to show that the perch of the wagon that tipped over was shorter than that of any other wagon owned by the defendant, and that that rendered the wagon less stable; that the front springs were old and the rear ones new, and that the body of this wagon tipped down forward while all the others were level; that the upper rocker plate instead of being flush with the lower one, as it should have been, was half

---

* At the time of the accident there was one horse in the shafts driven by the plaintiff and another horse in the lead driven by another driver. The "perch" of a wagon " is the wooden bar that connects the rear axle with the front one."

an inch back, and that the holes in the rocker plates for the king bolt and the king bolt itself were worn, which rendered the king bolt loose and the wagon liable to tip or rock from side to side. There was also evidence tending to show that this wagon rocked or tipped more than other wagons belonging to the defendant and that when the wagon tipped over the king bolt broke in the place where it was worn. As already noted the wagon "was loaded a little farther forward" than was common, and it appeared that immediately before the accident the other two wagons of the defendant had gone safely over the place where this one tipped over. Taking all the facts and circumstances into account, we think that it was a question for the jury whether the accident was due to a defective wagon provided by the defendant, or to jolts and jars caused by the surface of the ground, or the manner in which the wagon was being driven into the field where the lumber was to be deposited. It follows that in accordance with the report the entry must be

> *Judgment for the plaintiff for $5,000, with interest from the date of the verdict, and costs.*

The case was submitted on briefs.

*C. H. Stebbins, O. Storer & C. E. Burbank,* for the plaintiff.

*H. C. Sawyer & W. H. Hitchcock,* for the defendant.